## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBIN D. JONES, | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 16-CV-0049-CVE-FHM |
| | ) |
| MEGAN J. BRENNAN, | ) |
| POSTMASTER GENERAL, | ) |
| | ) |
| | ) |
|       **Defendant.** | ) |

## OPINION AND ORDER

Now before the Court is defendant's motion to dismiss (Dkt. # 9). Defendant asks the Court to dismiss plaintiff's complaint because plaintiff has failed to state a claim upon which relief can be granted. Defendant asserts that, with respect to plaintiff's discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), plaintiff's complaint fails to state a claim because the complaint lacks sufficient factual allegations to plausibly allege that plaintiff's suffered an adverse employment action. Id. at 4-5. With respect to plaintiff's claims under the Rehabilitation Act, 29 U.S.C. § 701 et seq., defendant argues plaintiff's claims fail as a matter of law because the Act does not apply to pregnancy. Id. at 2. Finally, as to plaintiff's claims regarding her sick leave, defendant argues that plaintiff has not exhausted her administrative remedies. Id. Plaintiff responds that her complaint contains sufficient factual support to state her Title VII claims, that the Rehabilitation Act applies to plaintiff's pregnancy, and that "defendant's argument concerning the unauthorized liquidation of plaintiff's accrued sick leave is irrelevant and moot." Dkt. # 11. Plaintiff asks the Court to deny defendant's motion, or, in the alternative, plaintiff asks for leave to amend her complaint. Id.

**I.**

Plaintiff, a formerly pregnant African-American female, filed this action in the Northern District of Oklahoma against her employer, the United States Postal Service (USPS), alleging discrimination and retaliation on the basis of race and gender in violation of Title VII, and failure to accommodate and retaliation in violation of the Rehabilitation Act. Dkt. # 1. Plaintiff began employment with the USPS as a mail carrier and currently serves as a custodian. Id. at 3. In June 2014, plaintiff began working as a "204B" supervisor, a position primarily involving computer work and supervising employees. Id. at 5. Plaintiff asserts that employees are placed in supervisor positions for a period of six months, after which the appointment may be renewed. Id. Plaintiff asserts that "renewals are the norm as this is how the USPS trains its rising supervisors." Id.

Plaintiff alleges that, because of her age and pregnancy history, she was "diagnosed with a 'high risk pregnancy,'" but did not initially disclose her pregnancy. Id. at 4-5. Plaintiff alleges that in November 2014, when her pregnancy began to show and when she began to experience physical limitations, she informed her manager, Jeff Bailey, that she had a high-risk pregnancy and might need accommodations. Id. at 5. Plaintiff states that she offered to provide a doctor's note or to fill out any necessary forms related to any requests for accommodations. Id. Plaintiff alleges that Bailey told her that documentation would be unnecessary. Id. Plaintiff alleges that the regional postmaster, Kathy Ervin-Johnson, and the station manager, Jeffrey Callison, were aware of both plaintiff's pregnancy and her position as a 204B supervisor. Id. at 6. Plaintiff alleges that her position as 204B supervisor was renewed for another six-month period, but was abruptly terminated on February 17, 2015, when Callison informed plaintiff that defendant was terminating plaintiff's supervisor position immediately and returning her to a custodial position. Id. Plaintiff alleges that

Ervin-Johnson specifically requested that plaintiff return to the custodial potion even though other employees were qualified for this position. Id. Plaintiff alleges that, when she returned to the custodial position, her manager, Andy Jones, asked what plaintiff would be able to do based on her pregnancy-related limitations. Id. Plaintiff asserts that she then engaged in protected activity by making a reasonable request for accommodation by asking for light-duty work until she saw her doctor and determined her exact limitations. Id. at 7. Plaintiff states that Jones provided an accommodation by allowing plaintiff to answer phones and sort mail. Id.

Plaintiff alleges that, the following day, Ervin-Johnson observed plaintiff answering phones and sorting mail and asked Jones why plaintiff was not performing her custodial job. Id. at 7. Plaintiff alleges that Ervin-Johnson angrily stated to plaintiff that "I had a high-risk pregnancy and I was capable of doing my job." Id. Plaintiff alleges that when Jones went to lunch, another supervisor, Joy Franks, told plaintiff that she needed to fill out a form related to her pregnancy-related limitations or clock out. Id. at 7-8. Plaintiff asserts that, because she had not seen the doctor and could not yet fill out the form, she suspected that Ervin-Johnson wanted to set her up by having her falsify a document. Id. at 8. Plaintiff asserts that she declined to fill out the form and asked to see a union steward, but was forced to clock out "after her demotion, after her reasonable accommodation was revoked, and after she refused to falsify a document." Id. Plaintiff alleges that defendant prevented plaintiff from working the next two days "because of her pregnancy and her refusal to falsify a document requiring an expert medical opinion." Id.

Plaintiff alleges that on February 25, the day after her doctor's appointment, she returned to work with a written doctor's note stating that plaintiff could work a full eight-hour day, but that she could stand for only four of the eight hours and required a sitting position for the remaining four.

3

Id. at 9. Plaintiff asserts that she presented the note to her manager, Jones. Id. Plaintiff alleges that, even though managers usually approve requests for accommodation, Jones told her that he would have to check with Ervin-Johnson and Callison. Id. Plaintiff asserts that, after Jones consulted with Ervin-Johnson and Callison, he denied plaintiff's request for accommodation because Ervin-Johnson stated that plaintiff could work only four hours a day because she had not suffered an on-the-job injury. Id. Plaintiff asserts that for the next several days she was permitted to work only four hours and that, without authorization, defendant attempted to fill in the missing four hours for each work day by drawing from plaintiff's sick leave. Id at 9-10. Plaintiff identifies a "John Doe" employee who was allowed to perform light duty work as an accommodation for his disability, and asserts that other employees who were not members of protected classes were given accommodations for their disabilities. Id. at 10.

Plaintiff asserts a claim of race and sex discrimination under Title VII, asserting that the USPS treated plaintiff differently and less favorably than similarly situated employees who were not members of a protected class, by, among other things, demoting plaintiff and revoking a reasonable accommodation. Id. at 12-13. Plaintiff also asserts a claim of retaliation under Title VII, asserting that the USPS retaliated against defendant for informing her manager that she was pregnant and considered high-risk by demoting plaintiff "and otherwise refusing to let [plaintiff] clock-in, earn wages, or be accommodated with light duty-work." Id. at 13. Finally, plaintiff asserts claims under the Rehabilitation Act for failure to accommodate and retaliation. Id. at 15-16. With respect to the failure to accommodate claim, plaintiff asserts that she verbally requested a reasonable accommodation but was retaliated against when plaintiff's supervisor revoked a the reasonable interim accommodation and "refused to accommodate any terms of the written doctor's note because

the temporary disability of pregnancy did not occur on-the-job." Id. at 15. With respect to plaintiff's retaliation claim, she alleges that "[a]s a direct and proximate result of Defendant's actions, Plaintiff could not work, had her benefit of sick leave hours wrongfully withdrawn, and otherwise suffered loss wages and benefits, as well as humiliation, inconvenience, mental distress, and embarrassment." Id. at 16. Defendant has filed a motion to dismiss, asserting that plaintiff's Title VII claims are not supported by sufficient factual matter and that plaintiff's Rehabilitation Act claims fail as a matter of law because the Act does not apply to pregnancy. Dkt. # 9, at 2. Defendant also asserts that any claim for damages based on allegedly "wrongfully withdrawn" sick leave must be dismissed because plaintiff's grievance successfully resolved this issue.[1] Id.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal

---

[1] The Court declines to consider this issue because, at the dismissal stage, the Court considers only the four corners of the complaint to determine the sufficiency of the allegations. It does not engage in factual disputes at this juncture.

determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991). Finally, "the 12(b)(6) standard does not require that [p]laintiff establish a prima facie case in her complaint, [but] the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012) (citations omitted).

### III.

### A.

The Court first considers plaintiff's Title VII claims. Under Title VII, it is unlawful "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Further, Title VII provides that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." Id. § 2000e(k). A plaintiff may prove a Title VII violation through either direct or circumstantial evidence. See Furr v. AT & T Techs., Inc., 824 F.2d 1537, 1548-49 (10th Cir. 1987). As plaintiff presents no direct evidence of a Title VII violation, the Court evaluates plaintiff's Title VII claims according to the burden-

shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). See Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008).

> Under the McDonnell Douglas framework, the plaintiff must carry the initial burden under the statute of establishing a prima facie case of [discrimination or retaliation]. Once the plaintiff has established a prima facie case, [t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.

Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000) (second alteration in original) (internal quotation marks and citations omitted).

### i.

To state a prima facie case of discrimination under Title VII, a plaintiff must allege: (1) that the victim belongs to a protected class; (2) that the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. EEOC v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007). With respect to the adverse employment action, the Tenth Circuit defines the term liberally and "[s]uch actions are not simply limited to monetary losses in the form of wages or benefits." Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998) "Conduct rises to the level of 'adverse employment action' when it 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Stinnet v. Safeway, Inc., 337 F.3d 1213, 1217 (10th Cir. 2003) (quoting Sanchez, 164 F.3d at 532)). Actions that merely inconvenience an employee or alter the employee's job responsibilities are not considered adverse employment actions. Piercy v. Maketa, 480 F.3d 1192, 1203 (10th Cir. 2007). Regarding whether plaintiff has sufficiently alleged that the challenged action took place under circumstancing giving rise to an inference of discrimination,

7

"[o]ne method by which a plaintiff can demonstrate an inference of discrimination is to who that the employer treated similarly situated employees more favorably." Luster v. Vilsack, 667 F.3d 1089, 1095 (10th Cir. 2011).

Plaintiff, an African-American female, is a member of a protected class. And plaintiff has sufficiently alleged that she suffered an adverse employment action in the form of her demotion from her supervisor position to her previous custodial position. With respect to her gender discrimination claim, plaintiff alleges the she was demoted shortly after she publically announced her pregnancy, that Ervin-Johnson made angry remarks to plaintiff about plaintiff's pregnancy and resulting limitations, that defendant revoked a temporary accommodation, and that defendant refused to provide plaintiff the necessary accommodations after plaintiff presented a doctor's note. This is sufficient to allege a causal connection between the adverse employment action and plaintiff's gender. But, with respect to plaintiffs race discrimination claim, she makes no allegations in her complaint related to race. Plaintiff identifies herself as an African American, but makes no allegations that any treatment she suffered was racially motivated. Without any allegations regarding treatment based on plaintiff's race, plaintiff cannot plausibly allege that the circumstances give rise to an inference of race discrimination. Defendant's motion to dismiss should be denied as to plaintiff's gender discrimination claim but granted as to plaintiff's race discrimination claim.

**ii.**

Under Title VII, it is similarly unlawful to retaliate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). As with plaintiff's claims of discrimination, plaintiff presents no direct evidence of retaliation. The Court thus relies on the McDonnell Douglas burden-shifting framework to evaluate

plaintiff's claim. To state a prima facie case of retaliation a plaintiff must allege: "'(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" Khalik v. United Airlines, 671 F.3d 1188, 1193 (10th Cir. 2012) (alteration in original) (quoting Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 998 (10th Cir. 2011)).

Plaintiff asserts that she engaged in protected opposition to discrimination by submitting her requests for accommodation based on her pregnancy-related limitations. But plaintiff makes no allegations that she made any complaints about her treatment once her pregnancy became publically known, including any complaints to supervisors about being removed from her supervisor position or being denied her requests for accommodation. Simply making a request for accommodation does not plausibly allege that plaintiff engaged in protected opposition to discrimination under Title VII. Under other anti-discrimination statutes, such as the Americans with Disabilities Act (ADA), requests for accommodation are sufficient to engage in protected activity. See Jones v. U.P.S., Inc., 502 F.3d 1175, 1194 (10th Cir. 2007). But in a Title VII claim, the critical inquiry is whether the protected activity was in opposition to discrimination. See Khalik, 671 F.3d at 1193. Plaintiff fails to plausibly allege that she engaged in protected activity in opposition to discrimination when her requests for accommodation were made before the alleged discriminatory conduct and plaintiff makes no allegations that she complained about her treatment. Plaintiff's retaliation claim should thus be dismissed.

**B.**

The Court next considers plaintiff's claims under the Rehabilitation Act. Plaintiff alleges that she was discriminated against based on her disability--pregnancy--because defendant failed to provide plaintiff with a reasonable accommodation. Dkt. # 1, at 15. Plaintiff also asserts that defendant retaliated against defendant by removing plaintiff from a previous accommodation, failing to provide plaintiff another accommodation, failing to allow plaintiff to work a full work day, and using plaintiff's accrued sick leave without plaintiff's authorization. Id. at 16. Defendant asks the Court to dismiss plaintiff's claims arising under the Rehabilitation Act, asserting that plaintiff does not suffer from a disability as defined by the Rehabilitation Act, requiring plaintiff's claims to be dismissed. Dkt. # 9, at 3-4.

Before considering the elements of each claim under the Rehabilitation Act, the Court must consider whether plaintiff has a qualifying disability. The Rehabilitation Act prohibits recipient of federal funding from discrimination on the basis of disability. Hwang v. Kan. State Univ., 753 F.3d 1159, 1161 (10th Cir. 2014). And claims under the Rehabilitation Act are governed by the same standard as claims under the American with Disabilities Act, 42 U.S.C. § 12010 et seq. (ADA). Shrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 971 (10th Cir. 2002). A prerequisite for application of the Rehabilitation Act is a qualifying disability. See 29 U.S.C. § 701. The Rehabilitation Act defines disabled as "a physical or mental impairment that substantially limits one or more major life activities." Id. § 705(9)(B). The ADA expands the term "disability" to include "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," "a record of such impairment," or "being regarded as having such impairment." McGeshick v. Principi, 357 F.3d 1146, 1150 (10th Cir. 2004) (quoting 42 U.S.C. § 12102(2)). "To

10

be substantially limited in a major life activity, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Id. (internal quotation marks omitted)  And "[t]he impairment's impact must be permanent or long term."  Id. (internal quotation marks omitted).

Plaintiff does not plausibly allege that she suffers from a qualifying disability so as to state a claim under the Rehabilitation Act.  Plaintiff alleges that she suffered from a high risk pregnancy, but makes no allegations that her high risk pregnancy resulted in any limitations to major life activities.  Plaintiff alleges that she was able to work a full eight-hour day with minimal limitations, raising the inference that plaintiff's pregnancy did not substantially limit one or more of her major life activities.  Without further factual allegations regarding any limitations in plaintiff's major life activities because of her high risk pregnancy, she cannot demonstrate that she suffers from a disability as defined by the Rehabilitation Act.  Further, although plaintiff alleges that she was denied her request for accommodation, she does not plausibly allege that her employer considered her or regarded her as disabled because of her high risk pregnancy.  She instead alleges that the employer would not accommodate her requests based on her pregnancy-imposed limitations, not that her employer in any way regarded her as disabled.  Plaintiff similarly makes no allegations regarding a record of impairment.  Because plaintiff fails to plausibly allege that she meets the threshold requirement for Rehabilitation Act claims, plaintiff's discrimination and retaliation claims should be dismissed.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Dkt. # 9) is **granted in part and denied in part:** it is granted as to plaintiff's Title VII race discrimination and Rehabilitation Act claims, but denied as to plaintiff's Title VII gender discrimination claim.

**IT IS FURTHER ORDERED** that plaintiff may file an amended complaint, consistent with the rulings herein, no later than **September 14, 2016**.

**DATED** this 31st day of August, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE