**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ROBIN D. JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-CV-0049-CVE-FHM** |
| | ) | |
| **MEGAN J. BRENNAN,** | ) | |
| **POSTMASTER GENERAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Now before the Court is Defendant the United States of America's Motion to Dismiss Fourth

Claim for Relief of the First Amended Complaint (Dkt. # 19). Defendant asks the Court to dismiss

plaintiff's retaliation claim under the Rehabilitation Act, 29 U.S.C. § 701 et seq., because plaintiff

has failed to allege sufficient facts to state a plausible retaliation claim under the Rehabilitation Act.

Dkt. # 19. Plaintiff responds that her complaint contains sufficient factual support to state a

retaliation claim under the Rehabilitation Act. Dkt. # 25.

**I.**

Plaintiff, a formerly pregnant African-American female, filed this action in the Northern

District of Oklahoma against her employer, the United States Postal Service (USPS), alleging

discrimination and retaliation on the basis of race and gender in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000h-6 (Title VII), and failure to accommodate and

retaliation in violation of the Rehabilitation Act. Dkt. # 1. The Court granted in part defendant's first

motion to dismiss (Dkt. # 9), dismissing plaintiff's Title VII race discrimination and Rehabilitation

Act claims. Plaintiff filed an amended complaint alleging discrimination and retaliation on the basis

of gender under Title VII and retaliation under the Rehabilitation Act. Dkt. # 17.

Plaintiff began employment with the USPS as a mail carrier and currently serves as a custodian. Id. at 3. In July 2014, plaintiff began working as a "204B" supervisor, a position primarily involving computer work and supervising employees. Id. at 5. Plaintiff asserts that employees are placed in supervisor positions for a period of six months, after which the appointment may be renewed. Id. at 6. Plaintiff asserts that "renewals are the norm as this is how the USPS trains its rising supervisors." Id.

Plaintiff alleges that, because of her age and pregnancy history, she was "diagnosed with a 'high risk pregnancy,'" but did not initially disclose her pregnancy to her employer. Id. at 5. Plaintiff alleges that in November 2014, when her pregnancy began to show and when she began to experience physical limitations, she informed her manager, Jeff Bailey, that she had a high-risk pregnancy and might need accommodations. Id. Plaintiff states that she offered to provide a doctor's note or to fill out any necessary forms related to any requests for accommodations. Id. Plaintiff alleges that Bailey told her that documentation would be unnecessary. Id. Plaintiff alleges that the regional postmaster, Kathy Ervin-Johnson, and the station manager, Jeffrey Callison, were aware of both plaintiff's pregnancy and her position as a 204B supervisor. Id. at 6. Plaintiff alleges that her position as 204B supervisor was renewed for another six-month period, but was abruptly terminated on February 17, 2015, when Callison informed plaintiff that defendant was terminating plaintiff's supervisor position immediately and returning her to a custodial position. Id. Plaintiff alleges that Ervin-Johnson specifically requested that plaintiff return to the custodial position even though other employees were qualified for this position. Id. Plaintiff alleges that, when she returned to the custodial position, her manager, Andy Jones, asked what plaintiff would be able to do based on her pregnancy-related limitations. Id. at 7. Plaintiff asserts that she then engaged in protected activity

by making a reasonable request for accommodation by asking for light-duty work until she saw her doctor and determined her exact limitations. Id. at 7. Plaintiff states that Jones provided an accommodation by allowing plaintiff to answer phones and sort mail. Id.

Plaintiff alleges that, the following day, Ervin-Johnson observed plaintiff answering phones and sorting mail and asked Jones why plaintiff was not performing her custodial job. Id. at 7-8. Plaintiff alleges that Ervin-Johnson angrily stated to plaintiff that "I had a high-risk pregnancy and I was capable of doing my job." Id. at 8. Plaintiff alleges that when Jones went to lunch, another supervisor, Joy Franks, told plaintiff that she needed to fill out a form related to her pregnancy-related limitations or clock out. Id. Plaintiff asserts that, because she had not seen the doctor and could not yet fill out the form, she suspected that Ervin-Johnson wanted to set her up by having her falsify a document. Id. Plaintiff asserts that she declined to fill out the form and asked to see a union steward, but was forced to clock out "after her demotion, after her reasonable accommodation was revoked, and after she refused to falsify a document." Id. at 9. Plaintiff alleges that defendant prevented plaintiff from working the next two days "because of her pregnancy and her refusal to falsify a document requiring an expert medical opinion." Id.

Plaintiff alleges that on February 25, the day after her doctor's appointment, she returned to work with a written doctor's note stating that plaintiff could work a full eight-hour day, but that she could stand for only four of the eight hours and required a sitting position for the remaining four. Id. at 9-10. Plaintiff asserts that she presented the note to her manager, Jones. Id. at 10. Plaintiff alleges that, even though managers usually approve requests for accommodation, Jones told her that he would have to check with Ervin-Johnson and Callison. Id. Plaintiff asserts that, after Jones consulted with Ervin-Johnson and Callison, he denied plaintiff's request for accommodation because

Ervin-Johnson stated that plaintiff could work only four hours a day because she had not suffered an on-the-job injury. Id. Plaintiff asserts that for the next several days she was permitted to work only four hours and that, without authorization, defendant attempted to fill in the missing four hours for each work day by drawing from plaintiff's sick leave. Id. at 10-11. Plaintiff alleges that she informed her union of defendant's refusal to accommodate her, and that two union representatives complained to defendant on plaintiff's behalf. Id. at 10. Plaintiff identifies a "John Doe" employee who was allowed to perform light duty work as an accommodation for his disability, and asserts that other employees who were not members of protected classes were given accommodations for their disabilities. Id. at 11.

Plaintiff asserts claims of sex discrimination and retaliation under Title VII and a claim of retaliation under the Rehabilitation Act. Id. at 13-17. With respect to plaintiff's retaliation claim, she alleges that she engaged in protected activity (1) "when she brokered the interim reasonable accommodation"; (2) "when she presented a written doctor's note"; and (3) "when she complained to her union representatives." Id. at 17. Plaintiff further alleges that as a result of her "good-faith" actions, defendant subjected her to "adverse employment actions." Id. Defendant has filed a motion to dismiss, asserting that plaintiff has not alleged facts sufficient to support a claim of retaliation under the Rehabilitation Act. Dkt. # 19, at 4.

**II.**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

(2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991). Finally, "the 12(b)(6) standard does not require that [p]laintiff establish a prima facie case in her complaint, [but] the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012) (citations omitted).

### III.

The Rehabilitation Act prohibits recipients of federal funding from discrimination on the basis of disability. Hwang v. Kan. State Univ., 753 F.3d 1159, 1161 (10th Cir. 2014). Claims under the Rehabilitation Act are governed by the same standard as claims under the American with Disabilities Act, 42 U.S.C. § 12101-12213 (ADA). Shrader v. Fred A. Ray, M.D., P.C., 296 F.3d

968, 971 (10th Cir. 2002). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). To establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show "(1) that she engaged in protected activity; (2) that she suffered a materially adverse action by [defendant] either after or contemporaneous with her protected activity; and (3) a causal connection between the protected activity and the adverse action." Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1131 (10th Cir. 2010). A plaintiff need not show that she was actually disabled, only that she "had a reasonable, good-faith belief that [she] was disabled." Foster v. Mountain Coal Co., 830 F.3d 1178, 1186 (10th Cir. 2016).

Defendant argues that plaintiff has failed to properly allege a Rehabilitation Act retaliation claim because she does not allege that either plaintiff or defendant perceived her to be disabled. Dkt. # 19, at 4. In support of its argument, defendant points an allegation in plaintiff's complaint asserting that "[a]t all pertinent times [plaintiff] was fit, qualified, and eager to hold a position at the USPS." Id. Plaintiff asserts that the complaint properly alleges that she perceived herself as disabled as did defendant. Dkt. # 25, at 4-9.

Plaintiff has alleged facts sufficient to state a claim of retaliation under the Rehabilitation Act.[1] Plaintiff alleges that she was diagnosed with a high-risk pregnancy, that she "suffered swelling of her extremities, severe nausea, and dizziness," and that her symptoms "severely impacted several major life activities, including . . . feeding herself, walking, standing for longer durations, her ability

---

[1]     This ruling in the context of a Rule 12 motion to dismiss is without prejudice to a Rule 56 motion if discovery does not give rise to a genuine dispute of material fact.

to clean her house or use chemicals on the job, and her ability to drive." Dkt. # 17, at 13. Plaintiff's

doctor also told her that she could not perform standing work for more than four hours in a day. Id.

at 9-10. Moreover, plaintiff's assertion that she was "fit, qualified, and eager" can be read as plaintiff

asserting that she was fit, qualified, and eager to perform work with the accommodation she alleges

that she requested. Thus, construing the allegations in the light most favorable to the plaintiff, the

complaint contains sufficient facts to support plaintiff's assertion that she had a reasonable good-

faith belief that she was disabled. Additionally, plaintiff's allegation that her manager, Jones,

perceived her as disabled when he asked what limitations she had and granted her a light-duty work

accommodation are sufficient to support plaintiff's assertion that defendant perceived her as

disabled.

**IT IS THEREFORE ORDERED** that Defendant the United States of America's Motion

to Dismiss Fourth Claim for Relief of the First Amended Complaint (Dkt. # 19) is **denied**.

**IT IS FURTHER ORDERED** that defendant must answer count 1 (Title VII gender

discrimination), count 2 (Title VII retaliation), and count 4 (Rehabilitation Act retaliation), as

alleged in plaintiff's amended complaint (Dkt. # 17), no later than **December 20, 2016**.

**DATED** this 6th day of December, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE